OPINION
{¶ 1} Appellant Hartford Insurance Company ("Hartford") appeals the decision of the Stark County Court of Common Pleas that granted summary judgment on behalf of Appellee Glen Pelc finding he was entitled to coverage under Hartford's commercial auto and umbrella policies issued to Pelc's employer, Advanced Microfinish, Inc. The trial court granted summary judgment in favor of Hartford, on the general liability policy, finding no coverage available to Pelc. The following facts give rise to this appeal.
 {¶ 2} This lawsuit is the result of an accident that occurred on March 4, 1998. On this date, a vehicle operated by Daniel Russell collided with Pelc's vehicle when Russell turned his vehicle in front of Pelc's vehicle. As a result of the accident, Pelc sustained permanent injuries. At the time of the accident, Russell, a part-time employee for the City of Avon's Fire Department, was responding to an emergency call. Appellant Russell was driving his own vehicle, not an emergency vehicle owned or operated by the City of Avon. Russell's vehicle was not equipped with emergency lights or sirens.
 {¶ 3} Following the accident, Pelc filed an action, in the Stark County Court of Common Pleas, against Hartford, seeking UM/UIM coverage pursuant to the Ohio Supreme Court's decision in the Scott-Pontzer[1]
case. Hartford insured Pelc's employer, Advanced Microfinish, Inc., a company located in Lorain County. Pelc sought coverage under the commercial automobile, general liability and umbrella policies Hartford issued to Advanced Microfinish, Inc.
 {¶ 4} In turn, Hartford filed a third-party complaint against Russell and the City of Avon on the basis that Russell and the City of Avon are responsible parties with liability limits in excess of Hartford's limits. Thereafter, Pelc amended his complaint to include direct claims against Russell and the City of Avon. Hartford cross-claimed.
 {¶ 5} Subsequently, Hartford, Russell and the City of Avon filed for summary judgment on the issue of immunity. Hartford sought summary judgment requesting the trial court to make a finding of no immunity, or at a minimum, that a genuine issue of material fact existed as to the issue of immunity. The trial court failed to rule on Hartford's motion. Russell and the City of Avon sought summary judgment requesting the trial court declare that they were entitled to immunity and that Hartford had no standing to bring a claim against Russell and the City of Avon. The trial court denied Russell's and the City of Avon's motion on this issue.
 {¶ 6} As it pertains to the issue of coverage, Hartford filed a motion for summary judgment seeking an order denying Pelc coverage under the policies it issued to Advanced Microfinish, Inc. The trial court granted summary judgment for Hartford as to the general liability policy, finding no coverage available to Pelc. Pelc also moved for summary judgment as to the issue of coverage. The trial court granted summary judgment, for Pelc, finding coverage under the commercial auto and umbrella policies Hartford issued to Advanced Microfinish, Inc.
 {¶ 7} Hartford timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 8} "I. The trial court erred in granting summary judgment for plaintiff-appellee, Pelc, where plaintiff failed to demonstrate that the tortfeasor was uninsured/underinsured.
 {¶ 9} "II. The trial court erred in (sic) when it granted summary judgment for plaintiff-appellee and determined that uninsured/underinsured motorists coverage existed under a commercial automobile policy of insurance issued by appellant, Hartford Fire Ins. Co. to advanced Microfinish, Inc., wherein the policy defined an insured to include `an employee of yours while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs,' and Glen Pelc was not working at the time of the accident.
 {¶ 10} "III. The trial court erred when it granted summary judgment for plaintiff-appellee and determined that uninsured/underinsured motorists coverage existed under a commercial automobile policy of insurance issued by appellant, Hartford Fire Ins. Co. to advanced Microfinish, Inc., wherein plaintiff failed to provide prompt notice, therefore prejudicing investigation rights of Hartford.
 {¶ 11} "IV. The trial court erred in granting summary judgment for plaintiff-appellee and determined that uninsured/underinsured motorists coverage existed under a (sic) umbrella liability insurance policy issued by appellant, Hartford Fire Ins. Co. to Advanced Microfinish, Inc., where advanced Microfinish is self insured.
 {¶ 12} "V. The trial court erred when if (sic) failed to transfer venue to Lorain County.
 {¶ 13} "VI. The trial court erred when it found um/uim coverage existed under the Hartford Policy for plaintiffs' (sic) claims and denied Hartford equal protection of the law."
"Summary Judgment Standard"
 {¶ 14} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 15} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 16} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review Hartford's assignments of error.
 III {¶ 17} We will begin our analysis by first addressing Hartford's Third Assignment of Error. Hartford maintains, under this assignment of error, the trial court erred when it granted summary judgment on behalf of Pelc because its investigation rights were prejudiced when Pelc failed to provide prompt notice under the commercial automobile policy and therefore, Pelc is not entitled to UM/UIM coverage under said policy. We agree.
 {¶ 18} Hartford maintains notice is a precondition to UM/UIM coverage under its policy. This portion of Hartford's policy provides as follows:
 {¶ 19} "A.2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT, OR LOSS
 {¶ 20} "a. In the event of `accident', `claim', `suit', or `loss', you must give us or our authorized representative prompt notice of the `accident' or `loss'. Include:
 {¶ 21} "(1) How, when and where the `accident' or `loss' occurred;
 {¶ 22} "(2) The `insured's' name and address; and
 {¶ 23} "(3) To the extent possible, the names and addresses of any injured person and witnesses."
 {¶ 24} A notice provision in an insurance policy can create a condition precedent, with which the failure to comply can preclude recovery of underinsured motorist insurance. Heiney v. The Hartford, Franklin App. No. 01AP-1100 at 3, 2002-Ohio-3718. In Ormet PrimaryAluminum Corp. v. Employers Ins. of Wausau, 88 Ohio St.3d 292,2000-Ohio-330, the Ohio Supreme Court addressed notice provisions in insurance contracts and stated:
 {¶ 25} "Notice provisions in insurance contracts serve many purposes. Notice provisions allow the insurer to become aware of occurrences early enough that it can have a meaningful opportunity to investigate. [Citations omitted.] In addition, it provides the insurer the ability to determine whether the allegations state a claim that is covered by the policy. [Citations omitted.] It allows the insurer to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims. [Citations omitted.] Further, it allows insurers to make timely investigations of occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims. * * * [W]e have held that `[a] provision in an insurance policy requiring `prompt' notice to the insurer requires notice within a reasonable time in light of all of the surrounding facts and circumstances.'" Id. at 303.
 {¶ 26} Thus, in the Ormet case, the Supreme Court concluded that "[a] provision in an insurance policy requiring notice to the insurer `as soon as practicable' requires notice within a reasonable time in light of all the surrounding facts and circumstances." Id. at syllabus.
 {¶ 27} In the case sub judice, Pelc first provided notice to Hartford on February 21, 2001, almost three years after the accident. In response, Pelc cites this court's decisions in Myers v. Safeco Ins. Co.of Am.(Feb. 18, 2000), Licking App. No. 99CA00083, reversed on the authority of Davidson v. Motorists Mut. Ins. Co., 91 Ohio St.3d 262,2001-Ohio-36 and Burkhart v. CNA Ins. Co., Stark App. No. 2001CA00265,2002-Ohio-903. This court's recent decision in Butcher v. Lewis, Stark App. No. 2001CA00219, 2002-Ohio-1858 also addresses this issue.
 {¶ 28} In Butcher and Myers, this court analyzed a commercial general liability policy and a homeowners policy, respectively. In both of these cases, we determined UM/UIM coverage arose by operation of law pursuant to R.C. 3937.18. We further determined that because UM/UIM coverage arose by operation of law, the restrictions and conditions of coverage in the respective underlying liability policies did not carry over to UM/UIM coverage.
 {¶ 29} As noted above, the Myers decision addressed a homeowner's policy that was found to be a motor vehicle policy. In concluding that coverage arose by operation of law, we relied on the case of Demetry v.Kim (1991), 72 Ohio App.3d 692, which involved a policy that was created by operation of law. In Demetry, the Tenth District Court of Appeals held that because "[t]he parties never intended underinsured coverage to be provided by the [business auto] policy, * * * there could be no negotiated exclusion intended to be implied to the underinsured coverage", which arose by operation of law. Id. at 698.
 {¶ 30} The Burkhart case involved a business auto policy which contained a UM/UIM endorsement, a commercial general liability policy and a commercial umbrella liability policy. On appeal, the insurer, Continental, argued no coverage existed under the business auto policy because the plaintiffs failed to comply with the policy provisions relative to notice and the protection of subrogation rights. We rejected Continental's argument citing our decision in Myers and the district court's decision in Martin v. Liberty Mut. Ins. Co. (N.D.Ohio. 2001),187 F. Supp.2d 896. Thus, we concluded in Burkhart that UM/UIM coverage, under the business auto policy, was available despite plaintiffs' failure to obtain the insurer's consent to release all claims against the tortfeasor.
 {¶ 31} This court has since determined our decision in Burkhart was incorrect. In Szekeres v. State Farm Fire and Cas. Co., Licking App. No. 02CA00004, 2002-Ohio-5989, we concluded the Burkhart decision erroneously relied on the Myers case. In reaching this conclusion, the majority noted that UM/UIM coverage was not created by operation of law, as it was in Myers, as said coverage already existed in the policy. Id. at 2. The majority further concluded that:
 {¶ 32} "Scott-Pontzer, * * *, is the exception to the general rule that an insurance policy is a contract and the parties are bound by the provisions of the contract. See, Scott-Pontzer at 663, citing Nationwidev. March (1984), 15 Ohio St.3d 107, 109. Without arguing the absurd, we find the conditional provisions must carry through or there would be no need to have a written policy. Scott-Pontzer permits appellees to be insureds, but binds them to the conditional provisions of the policy under which they are insured." Id.
 {¶ 33} Thus, the majority in Szekeres found based upon the subrogation and notice provisions which are enforceable contract conditions of the commercial automobile policy, plaintiff was not entitled to coverage. Id. at 3. In agreeing with this conclusion, Judge Hoffman wrote separately and explained that:
 {¶ 34} "If UIM/UDM coverage arises by operation of law, failure to comply with restrictions to or conditions of coverage in the underlying liability policy do not `invalidate' UIM/UDM coverage. However, where UIM/UDM coverage exists as a matter of contract, restrictions to or conditions of coverage found in the policy are valid and enforceable against `Scott-Pontzer' type insureds.
 {¶ 35} "How the plaintiff's status as an insured arises, whether as a named insured within the policy or as a result of a Scott-Pontzer
ambiguity, does not bear on the issue of the enforceability of conditions of the insurance contract. Once determined to be an insured, the validity of restrictions to or conditions of UIM/UDM coverage depends upon whether the UIM/UDM coverage arises by operation of law under R.C. 3937.18 or by contract." Id. at 9.
 {¶ 36} In the case sub judice, Pelc is an insured due to aScott-Pontzer ambiguity. Further, UM/UIM coverage did not arise in this case by operation of law. Instead, it is contained in Hartford's policy of insurance under which Pelc seeks coverage. Accordingly, pursuant to our decision in Szekeres, Pelc was required to comply with the notice provisions of Hartford's commercial automobile policy. Having determined that Pelc was required to comply with the notice provision of Hartford's policy, we remand this matter to the trial court for the court to review this issue in light of the Ohio Supreme Court's recent decision inFerrando v. Auto-Owner Mut. Ins. Co., 98 Ohio St.3d 186, 2002-Ohio-7217. In Ferrando, the Court explained:
 {¶ 37} "* * * a court evaluating whether a prompt-notice or consent-to-settle * * * provision in a UIM policy was breached, and if so, the effects of the breach must conduct a two step inquiry * * *. The first step is to determine whether a breach of the provision at issue actually occurred. The second step is, if a breach did occur, was the insurer prejudiced so that UIM coverage must be forfeited?" Id. at 21.
 {¶ 38} "An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary." Id. at 20.
 {¶ 39} Accordingly, Hartford's Third Assignment of Error is sustained. We will proceed to address Hartford's remaining assignments of error which are pertinent should the trial court determine Hartford was not prejudiced by Pelc's notice.
 I {¶ 40} In its First Assignment of Error, Hartford maintains Pelc has not demonstrated that Russell and the City of Avon are uninsured/underinsured and therefore, the trial court erred when it found Pelc was entitled to UM/UIM coverage under the commercial auto and umbrella policies it issued to Advanced Microfinish, Inc. We agree.
 {¶ 41} Specifically, Hartford contends Russell and the City of Avon are still parties to this case as the trial court failed to rule on its motion for summary judgment requesting the trial court to make a determination that Russell and the City of Avon are not entitled to immunity under R.C. 2744. Accordingly, Hartford concludes the trial court has not determined Russell and the City of Avon are uninsured. Hartford also maintains that Russell and the City of Avon have liability limits in excess of Hartford's limits and therefore, Pelc has not established that Russell and the City of Avon are underinsured.
 {¶ 42} In response, Pelc admits that he has the burden of proving both the existence of a loss and coverage under an insurance policy. Pelc also concedes that he must prove that he was injured as a result of an uninsured motorist. In support of his argument that he was injured by an uninsured motorist, Pelc cites R.C. 3937.18, Sections (D) and (K), which were in effect on the date the policies under consideration were issued. This version of R.C. 3937.18 was amended by H.B. 261, which became effective September 3, 1997, and provides, in pertinent part:
 {¶ 43} "(D) For purpose of this section, a motor vehicle shall be deemed uninsured in either of the following circumstances:
 {¶ 44} "(1) The liability insurer denies coverage or is or becomes the subject of insolvency proceedings in any jurisdiction;
 {¶ 45} "* * *"
 {¶ 46} "(K) As used in this section, `uninsured motor vehicle' and `underinsured motor vehicle' do not include any of the following motor vehicles:
 {¶ 47} "* * *
 {¶ 48} "(3) A motor vehicle owned by a political subdivision, unless the operator of the motor vehicle has an immunity under Chapter 2744. of the Revised Code that could be raised as a defense in an action brought against the operator by the insured;
 {¶ 49} "* * *
 {¶ 50} Russell and the City of Avon maintain they are immune from liability pursuant to R.C. 2744 and that due to this immunity, they are uninsured. The record indicates Hartford, Russell and the City of Avon addressed the issue of sovereign immunity in their respective motions for summary judgment. Hartford requested the trial court, in its motion for summary judgment, to make a finding that Russell and the City of Avon were not entitled to immunity pursuant to R.C. 2744. Russell and the City of Avon, in their motion for summary judgment, requested the trial court to find they were entitled to sovereign immunity.
 {¶ 51} In its judgment entry, the trial court failed to rule on Hartford's motion as to the issue of immunity. When a trial court fails to rule on a motion, the motion is considered denied. State v. Olah,146 Ohio App.3d 586, 592, 2001-Ohio-1641, citing Georgeoff v. O'Brien
(1995), 105 Ohio App.3d 373, 378; Solon v. Solon Baptist Temple, Inc.
(1982), 8 Ohio App.3d 347, 351-352. However, as to Russell's and the City of Avon's motion for summary judgment, as it pertained to the issue of sovereign immunity, the trial court denied the parties' request to find them immune from liability. Thus, at this point in the proceedings, the trial court has issued interlocutory orders as it pertains to the issue of sovereign immunity. It has impliedly denied Hartford's request to find that Russell and the City of Avon are not entitled to immunity and, at the same time, denied Russell's and the City of Avon's request that they be found entitled to immunity. Without a decision as to whether Russell and the City of Avon are entitled to immunity, it cannot be determined whether Pelc is uninsured or underinsured thereby entitling him to UM/UIM proceeds under Hartford's policies of insurance issued to Advanced Microfinish, Inc.
 {¶ 52} Accordingly, we sustain Hartford's First Assignment of Error and remand this matter to the trial court to determine the issue of sovereign immunity. If Russell and the City of Avon are immune from liability, the tortfeasors are uninsured and Pelc is entitled to recover UM benefits from his insurer, Nationwide, in the amount of $25,000. Pelc may also be entitled to recover UM benefits from his employer's insurer, Hartford, if the trial court determines Pelc's notice did not prejudice Hartford. However, if the trial court finds Russell and the City of Avon are not immune from liability, the tortfeasors are not underinsured, since the tortfeasors' policy limits of $2,000,000 exceed Hartford's policy limits of $1,000,000 issued to Advanced Microfinish, Inc. and Pelc's policy limits of $25,000 from Nationwide.
 II {¶ 53} Hartford contends, in its Second Assignment of Error, the trial court erred when it granted summary judgment on behalf of Pelc because the commercial automobile policy of insurance contains a definition of the "NAMED INSURED" which includes individuals and therefore, no ambiguity exists. We disagree.
 {¶ 54} Hartford's commercial automobile policy defines an "insured" as follows:
 {¶ 55} "B. WHO IS AN INSURED
 {¶ 56} "1. You.
 {¶ 57} "2. If you are an individual, any `family member.' * * *."
 {¶ 58} The policy also contains a commercial automobile broad form endorsement which modifies the Business Auto Coverage Form, and amends the definition of a "Named Insured" under liability coverage to include:
 {¶ 59} "d. Any employee of yours while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs."
 {¶ 60} Hartford maintains the rationale of the Scott-Pontzer case does not apply to the case sub judice because the endorsement modifies the definition of "WHO IS AN INSURED" such that it is not ambiguous since it includes any employee using a covered auto while conducting his or her employer's business or personal affairs.
 {¶ 61} In Burkhart, supra, we addressed a similar argument and held:
 {¶ 62} "Continental submits because the policies do not limit protection solely to the corporate entity listed as one of the name (sic) insureds, this matter is distinguishable from Scott-Pontzer, in which the only name (sic) insured was the corporation. We disagree with Continental. The definition of `Who Is an Insured' in the Continental policies is identical to the definition of `Who is an Insured' found in the Liberty Fire policy in Scott-Pontzer. Although specific individuals are named insureds under the Continental policies, such fact does not cure the ambiguity created when `you' refers to Western Branch Diesel, Inc. as the named insured. The rationale announced by the Ohio Supreme Court in Scott-Pontzer is applicable to the instant matter." Id. at 2.
 {¶ 63} Likewise, in the matter currently before the court, the language used to define "WHO IS AN INSURED" is identical to the language reviewed by the Ohio Supreme Court in Scott-Pontzer. The fact that an endorsement to the Business Auto Coverage Form modifies the definition of "Named Insured" does not change our analysis as Pelc clearly qualifies as an "insured" under Hartford's commercial automobile policy. Since Pelc qualifies as an "insured" under the definition contained in the commercial automobile policy, he does not have to also qualify as an "insured" under the Business Auto Coverage Form. Further, the modified definition of "Named Insured" under the Business Auto Coverage Form does not limit "WHO IS AN INSURED," but instead, expands the definition of "insured" to include certain other individuals.
 {¶ 64} Accordingly, we overrule Hartford's Second Assignment of Error. If the trial court determines Hartford was not prejudiced by Pelc's notice and Russell and the City of Avon are found to be immune from liability, Pelc would be entitled to recover as an "insured" under Hartford's commercial automobile policy.
 IV {¶ 65} In its Fourth Assignment of Error, Hartford maintains Pelc has no viable UM/UIM claims under Hartford's umbrella policy because Advanced Microfinish, Inc. is self-insured and therefore, outside the purview of Ohio's UM/UIM statute. We disagree.
 {¶ 66} In Grange Mut. Cas. Co. v. Refiners Transport Terminal Corp. (1986), 21 Ohio St.3d 47, the Ohio Supreme Court held that the uninsured motorist provisions of former R.C. 3937.18 did not apply to either self-insurers or financial responsibility bond principals. Id. at syllabus. In reaching its decision, the Court quoted, with approval,Snyder v. Roadway Express, Inc. (1982), 7 Ohio App.3d 218, which had found that to hold R.C. 3937.18 applied to self-insurers "would result in the absurd `situation where one has the right to reject an offer of insurance to one's self * * *[.]'" Grange Mut. Cas. Co. at 49.
 {¶ 67} This court recently addressed this issue in the case ofRupple v. Moore, Ashland App. No. 02-COA-003, 2002-Ohio-4873. The policy at issue in Rupple had a liability limit of two million dollars and a matching deductible of two million dollars. Id. at 2. The policy required the insured to reimburse the insurer for any claims paid on its behalf. Id. Further, the insurer agreed to provide services to the insured, including the defense and adjustment of claims made against it, and use of its licenses as an insurer. Id. This agreement permitted the insured to satisfy the motor vehicle financial responsibility requirements of the various states in which it operated motor vehicles. Id. Relying upon the Supreme Court's decision in Grange Mut. Cas. Co., supra, we concluded R.C. 3937.18, which required insurers to offer UM/UIM coverage with every automobile liability or motor vehicle liability policy did not apply to self-insurers. Id. at 3.
 {¶ 68} In the case sub judice, Hartford maintains Advanced Microfinish, Inc. is self-insured because the umbrella policy is subject to a self-insured retention of $10,000 per occurrence. We do not find the retention of $10,000 per occurrence makes Advanced Microfinish, Inc. self-insured. Further, unlike in the Grange Mut. Cas. Co. and Rupple cases, the umbrella policy Hartford issued to Advanced Microfinish, Inc. specifically contains UM/UIM coverage in the amount of ten million dollars per coverage. Thus, Hartford's policy differs from the policies addressed in the Grange Mut. Cas. Co. and Rupple cases since the umbrella policy specifically contains an endorsement for UM/UIM coverage. The facts of this case do not present the issue of whether UM/UIM coverage had to be offered by Hartford. Pursuant to the language of the policy, Hartford is not self-insured and the umbrella policy specifically contains an endorsement for UM/UIM coverage.
 {¶ 69} Hartford's Fourth Assignment of Error is overruled. If the trial court finds Hartford was not prejudiced by Pelc's notice and Russell and the City of Avon are immune from liability, Pelc would be entitled to coverage under the umbrella policy in the event he exhausts all coverages under the primary policies.
 V {¶ 70} Hartford maintains, in its Fifth Assignment of Error, the trial court erred when it failed to transfer venue to Lorain County. We disagree.
 {¶ 71} Hartford contends that under Civ.R. 3, Lorain County is the proper venue for this lawsuit because the accident occurred in Lorain County and the tortfeasor is a resident of Lorain County. Hartford further maintains that in Pelc's complaint, the sole purported basis for venue in Stark County is that Hartford "is an insurance company licensed by the State of Ohio to sell and engage in the sale of insurance policies to customers in the State of Ohio, including Stark County, Ohio." Complaint, Sept. 18, 2001, at paragraph six.
 {¶ 72} We conclude Hartford's argument must fail pursuant to Civ.R. 3(B)(7), which provides:
 {¶ 73} "(B) Venue: where proper
 {¶ 74} "Any action may be venued, commenced, and decided in any court in any county. When applied to county and municipal courts, `county,' as used in this rule, shall be construed, where appropriate, as the territorial limits of those courts. Proper venue lies in any one or more of the following counties:
 {¶ 75} "* * *
 {¶ 76} "(7) In actions described in Civ.R. 4.3, in the county where plaintiff resides;
 {¶ 77} "* * *
 {¶ 78} Because Hartford is a non-resident, Pelc accomplished service on Hartford pursuant to Civ.R. 4.3. Therefore, under Civ.R. 3(B)(7), venue is proper in Stark County.
 {¶ 79} Hartford's Fifth Assignment of Error is overruled.
 VI {¶ 80} In its Sixth Assignment of Error, Hartford contends the trial court's decision finding Pelc entitled to UM/UIM coverage denied it equal protection of the law. We decline to address this issue as it lacks ripeness.
 {¶ 81} Ripeness "is peculiarly a question of timing." RegionalRail Reorganization Act Cases (1974), 419 U.S. 102, 138. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." AbbottLaboratories v. Gardner (1967), 387 U.S. 136, 148, overruled on other grounds, (1977), 430 U.S. 99. As one writer has observed:
 {¶ 82} "The basic principle of ripeness may be derived from the conclusion that `judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards to the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells a legal injury to the plaintiff." Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876.
 {¶ 83} In support of this assignment of error, Hartford contends its subrogation rights were destroyed and that it did not receive prompt notice of Pelc's claim. These issues are not ripe for disposition. The issue of Hartford's subrogation rights is dependent on whether Russell and the City of Avon are entitled to immunity. This issue has not yet been decided by the trial court. Also, the issue of whether Hartford was prejudiced by Pelc's notice has yet to be determined by the trial court.
 {¶ 84} Accordingly, Hartford's Sixth Assignment of Error is overruled.
 {¶ 85} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
By: Wise, J. and Edwards, J., concurs.
Hoffman, P.J., concurs separately.
Topic: Failure to Demonstrate Tortfeasor UM/UIM.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292.